**INTERNATIONAL MINERALS AND CHEMICAL CORPORATION and William E. Burke, Plaintiffs,**

**v.**

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. No. 538–58.**

United States District Court District of Columbia.

March 31, 1960.

James E. Cockfield, Edward S. Irons, Washington, D. C., for plaintiffs.

C. W. Moore, Washington, D. C., for defendant.

PINE, Chief Judge.

Plaintiffs seek a judgment against the Commissioner of Patents authorizing him to grant a reissue patent on an application containing two claims, namely claims 15 and 16. Claim 16 is controlled by a decision on claim 15 and claim 15 need only be considered.

Claim 15 is for a process for the production of "magnesium sulfate from langbeinite". The process reacts langbeinite with water or an unsaturated aqueous solution of magnesium sulfate substantially free from anions other than sulfate. The langbeinite and the aqueous material are employed in proportions which will produce by the reaction a precipitate of leonite substantially uncon-

taminated with solid magnesium sulfate and an aqueous phase substantially saturated with magnesium sulfate. The leonite is separated from the solution containing magnesium sulfate and a small proportion of potassium sulfate. This solution of magnesium sulfate is substantially free from anions other than sulfate.

Defendant first relies on the Barr patent, and the issue in that connection is whether plaintiffs' claims here in issue are patentable over that patent.

The Barr patent is a process for the manufacture of potassium sulfate involving two reaction steps. The first step involves the reaction of langbeinite with potassium sulfate mother liquor recycled after the second step, and the filtering off of the leonite or schoenite from the mother liquor containing magnesium, and the reacting of the leonite or schoenite with potassium chloride, from which crystals of potassium sulfate, the end product, are filtered and the residuum recycled for use in the first reaction step.

As set forth above the claim in suit is for the production of magnesium compounds more particularly magnesium sulfate from langbeinite. It involves only one step, namely, the reacting of langbeinite with water or an unsaturated aqueous solution of magnesium sulfate resulting in the separation by precipitation of leonite uncontaminated with solid magnesium sulfate and a mother liquor saturated with magnesium sulfate and a minor portion of potassium sulfate.

While the Barr process discloses at an intermediate step the production of a mother liquor containing magnesium, the process requires potassium chloride and teaches its use as an essential reactant, whereas the plaintiffs' process excludes the use of potassium chloride and requires only water or an unsaturated aqueous solution of magnesium sulfate substantially free from anions other than sulfate.

It will thus be noted that the two processes are different in method and ingre-

dients and the question before the Court is whether on the record plaintiffs' process which excludes potassium chloride and produces a reaction of langbeinite with water would be obvious to a man reasonably skilled in the art in the light of the Barr teaching. The testimony of the expert witnesses was to the effect that it would not be obvious, and they base their opinions on experience as well as objective reasoning. I am of the opinion that their testimony should be accepted and that the process of reacting langbeinite with water or other aqueous solution substantially free from anions other than sulfate is invention.

■ Another point made by defendant is that the claim in issue is not for the same invention as the original patent and therefore not cognizable under Section 251, 35 U.S.C., providing for the reissue of defective patents. The difference between the original patent and the instant claim is that the last step of separating the magnesium sulfate from the solution into solid epsomite was omitted. Defendant particularly relies on the case of United States Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corporation, 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105. In that case, however, the Court held that the reissue patent omitted one of the essential steps prescribed in the original, namely, the introduction of water in the process, thus broadening the claims to cover a new and different combination and that this rendered the reissue void. Here, however, there is no new or different combination. The only change is that the plaintiffs do not pursue the process in obtaining the result of splitting langbeinite with water to the extent of producing epsomite in solid form but stop with the production of magnesium sulfate in solution. In the Carbide case, supra, there was an omission of an intermediate element which previously had been taught to be essential, and this vitiated the reissue. Here, the invention resides in achieving magnesium sulfate in the manner taught, and the last step of separating solid epsomite therefrom is no part of the invention and

was well known to the art. I am, therefore, of the opinion that the Carbide case, supra, is not an obstacle to the reissue here involved.

■ Defendant further contends that claim 15 does not define the invention with the definiteness required by Section 112, 35 U.S.C. To me it seems that the requirement that the solution be "substantially free from anions other than sulfate" makes the claim sufficiently definite, particularly when it is considered that this limitation narrows the claim.

An additional contention of defendant is that it was not the intention of the plaintiff-inventor to omit the epsomite separation step, and in this connection he cites In re De Jarlais, 233 F.2d 323, 326, 43 CCPA 900. There the Court held "that the same invention means whatever was described in the original patent, and which appears to have been *intended* to be secured thereby." (Italics supplied.) Upon consideration of the patent in its entirety, I am unable to subscribe to defendant's contention, but have come to the conclusion that what the inventor intended was to cover two alternative embodiments, namely, (1) splitting langbeinite with the water present in the recycled water solution of magnesium sulfate after separating the epsomite and (2) splitting langbeinite with plain water.

■ Lastly, defendant claims that plaintiffs cannot prevail because of the reissue oath of the plaintiff-inventor in which he stated that the matters involved in the reissue application came to his attention only after issuance of his patent and in the course of a study thereof having to do with the projected commercial ultilization of the invention. From this defendant argues that the present claim was not omitted by inadvertence. Plaintiffs contend, however, that the plaintiff-inventor, now too ill to testify in court or by deposition, was at the time an experienced chemist in this field and certainly must have known what he was producing, and that what he intended by the affidavit was to state that at

the time of the invention magnesium sulfate solution was not an economic source of magnesium in his area, but that by the time the reissue application was filed the economic situation had changed. As I view it, plaintiffs' oath should not be construed to mean that he did not consider the process of claim 15, omitting the epsomite step, to be part of his invention prior to the filing of the reissue application, particularly because the splitting of langbeinite with water is the essence of his invention.

I am, therefore, of the opinion that plaintiffs are entitled to judgment authorizing defendant to grant a reissue patent containing the two claims here involved.

Counsel will submit findings of fact, conclusions of law and judgment in accordance herewith.